Opinion for the court filed by Circuit Judge DYK.
Dissenting opinion filed by Circuit Judge NEWMAN.
DYK, Circuit Judge.
Appellants Fresenius USA, Inc. and Fresenius Medical Care Holdings, Inc. (collectively, “Fresenius”) brought a declaratory judgment action against Baxter International, Inc., and Baxter Healthcare Corporation (collectively, “Baxter”), alleging, inter alia, that claims 26-31 of U.S. Patent No. 5,247,434 (“the '434 patent”) were invalid and not infringed. Baxter counterclaimed for infringement. The dis *1332 trict court entered judgment against Fre-senius, finding the specified '434 claims infringed and not invalid. On appeal, the parties did not contest infringement. We affirmed the determination that the claims were not invalid, but remanded to the district court to reconsider its injunction and post-verdict damages.
While the litigation was pending on remand, the United States Patent and Trademark Office (“PTO”) completed a reexamination of the '434 patent and determined that all asserted claims were invalid. We affirmed the PTO’s determination in the reexamination proceeding, and our mandate issued. Meanwhile the district court entered judgment against Fresenius in the pending infringement proceedings. Both parties appealed. In light of the cancellation of the asserted claims of the '434 patent, and the fact that the infringement suit remains pending before this court, Fresenius argues that Baxter no longer has a cause of action. We agree. We accordingly vacate the district court’s judgment and remand with instructions to dismiss.
BackgRound
The issue in this case is whether the cancellation of the asserted claims of the '434 patent by the PTO, pursuant to the agency’s statutory reexamination authority, must be given effect in this pending infringement litigation.
Baxter is the owner of the '434 patent, which is directed to a hemodialysis machine. Hemodialysis machines are used in the place of kidneys to cleanse the blood of toxins. See Fresenius USA, Inc. v. Baxter Int’l, Inc., 582 F.3d 1288, 1291-92 (Fed.Cir.2009) (“Fresenius I"). When a person’s blood is pumped through the machine, toxins pass from the blood into a solution called dialysate. The relevant claims of the '434 patent teach the use of a dialysis machine with an integrated touch screen interface. See '434 patent col. 40 11. 29-68.
I
In 2003, Fresenius, a manufacturer of hemodialysis machines, filed suit in the United States District Court for the Northern District of California seeking declaratory judgments of invalidity and non-infringement with respect to three[1] Baxter patents, including claims 26-31 of the '434 patent, as well as claims of U.S. Patent No. 5,744,027 (“the '027 patent”) and U.S. Patent No. 6,284,131 (“the '131 patent”). Fresenius Med. Care Holdings, Inc. v. Baxter Int’l, Inc., No. 03-1431, 2007 WL 518804, at *1 (N.D.Cal. Feb. 13, 2007). Baxter counterclaimed for infringement. Id. Following claim construction, Freseni-us stipulated to infringement of the '434 patent’s claims, but asserted that the claims were invalid. Id. at *2. A jury returned a verdict in Fresenius’ favor, finding the relevant claims of the '434 patent invalid, and also finding certain claims of the '027 and '131 patents invalid. Id.
However, in February of 2007 the district court granted Baxter’s motion for judgment as a matter of law (“JMOL”), finding that Fresenius had presented insufficient evidence to support the jury’s *1333 invalidity verdict, and that Fresenius had therefore not proven that the claims of the patents were invalid. Id. at *2, *8-13. In October of 2007, the district court proceeded to a jury trial on damages. The jury awarded $14,266 million to Baxter for infringement of the three asserted patents. In April of 2008, the district court entered a permanent injunction, which it stayed, and awarded Baxter ongoing post-verdict royalties on infringing machines and related disposables sold by Fresenius. Both parties appealed to this court.[2]
On September 10, 2009, we reversed-in-part, affirmed-in-part, vacated-in-part, and remanded. Fresenius I, 582 F.3d at 1304. We held that the asserted claims of the '027 patent and the '131 patent were invalid, reversing the district court’s JMOL decision as to those patents. Id. at 1296-1302. However, we agreed that as a matter of law, Fresenius had failed to present sufficient evidence showing that claims 26-31 of the '434 patent would have been obvious. Id. at 1302. These claims required a “means for delivering the dialy-sate to a dialysate compartment of a hemo-dialyzer,” '434 patent col. 40 11. 33-35, and Fresenius “failed to present any evidence — let alone substantial evidence— that the structure corresponding to the means for delivering dialysate limitation, or an equivalent thereof, existed in the prior art.” Fresenius I, 582 F.3d at 1299. We further held that Fresenius failed to present evidence that a structure required by dependent claim 30, a “means for delivering an anticoagulant to a patient,” existed in the prior art references. Id. at 1300.
We therefore affirmed the district court’s grant of JMOL with respect to the claims of the '434 patent, reversed with respect to the other two patents, and vacated the district court’s injunction and royalty awards. Id. at 1302. We “remand[ed] for the district court to revise or reconsider the injunction in light of our reversal of the district court’s grant of JMOL regarding the '027 and '131 patents,” and “to consider whether the previous [royalty] award [wa]s proper in light of this court’s modification of the district court’s judgment.” Id. at 1303. We noted that, “[i]n particular, ... our decision ... may [have] affect[ed] how the district court weighs [the relevant] factors” in determining the royalty award. Id.
On remand, Baxter moved for a final decision on the permanent injunction and ongoing royalty. Fresenius responded that no injunction should issue because it was no longer selling infringing machines, and that the amount of the post-verdict ongoing royalties was unreasonable. Fre-senius also sought a new trial for pre-verdict damages for infringement of the '434 patent. In May of 2011, the district court denied Fresenius’ motion for a new pre-verdict damages trial. See Fresenius USA, Inc. v. Baxter Int'l Inc., No. 03-1431, 2011 WL 2160609 (N.D.Cal. May 26, 2011). The district court scheduled further proceedings on the post-verdict royalties, and held an evidentiary hearing in December of 2011. The permanent injunction was no longer an issue at this point because the '434 patent had expired in April of 2011.
On March 8, 2012, the district court awarded Baxter post-verdict damages at a reduced royalty rate. See Fresenius USA, *1334 Inc. v. Baxter Int’l, Inc., No. 03-1431, 2012 WL 761712, at *14-16 (N.D.Cal. Mar. 8, 2012). One week later, on March 16, 2012, the district court entered final judgment for Baxter. J.A. 66-67. The district court ordered Fresenius to pay Baxter $14,266 million plus interest in pre-judgment damages (based on the original jury award), $9.3 million plus interest in post-verdict royalties on infringing machines, additional royalties on related disposables sold prior to the expiration of the '434 patent, and costs. Fresenius appealed, arguing that a new pre-verdict damages trial was required, while Baxter cross-appealed the district court’s reduction of the postverdict royalties. On May 3, 2012, the district court granted Fresenius’ motion to stay execution of the new judgment pending this appeal. In granting Fresenius’ motion to stay, the court rejected the argument that Baxter was entitled to enforce and execute on the 2007 judgment. The district court explained that “the March 16, 2012 final judgment appears to super-cede [sic] the Nov. 7, 2007[,] final judgment.” J.A. 995.
II
We now turn to the PTO reexamination proceedings. In 2005, while the district court litigation was pending, Fresenius requested ex parte reexamination of claims 26-31 of the '434 patent, which, as noted, are the only claims remaining in the pending infringement litigation. See In re Baxter Int’l, Inc., 678 F.3d 1357, 1360 (Fed. Cir.2012), reh’g en banc denied, 698 F.3d 1349 (Fed.Cir.2012).
In January of 2006, the PTO agreed that a substantial new question of patentability had been raised in light of new prior art, and granted the request for reexamination. The reexamination proceeded in parallel with the district court litigation. In December 2006, less than a year before the damages trial, the PTO examiner reached an initial determination that the claims would have been obvious. In December of 2007, the PTO examiner reached a final determination rejecting claims 26-31 of the '434 patent. The examiner concluded, inter alia, that all structures required by claim 26, including the “means for delivering the dialysate,” were present in the prior art, and that the claim would have been obvious. See Ex parte Baxter Int’l, Inc., No. 2009-006493, 2010 WL 1048980, at *5-6, *8-9, *14 (B.P.A.I. Mar. 18, 2010). The examiner reached this conclusion by relying in part on Lichtenstein, a reference that was not before the PTO during the initial examination.[3] The examiner also determined that claim 30 would have been obvious over a combination of references including Lichtenstein and Thompson. Like Lichtenstein, Thompson was not before the PTO during the initial examination. Ex parte Baxter, 2010 WL 1048980, at *15, *17. Thus, as we stated in In re Baxter, “in this case, the patent examiner relied on new prior art that had not been raised [in the initial examination or] in the prior district court proceeding.” 678 F.3d at 1365.[4]
*1335 In March of 2010, the Board of Patent Appeals and Interferences affirmed the examiner’s determination that the relevant claims would have been obvious in light of prior art overlooked in the initial examination, including Lichtenstein and Thompson. See Ex parte Baxter, 2010 WL 1048980. Baxter challenged the examiner’s analysis of the prior art, but as the Board noted, Baxter never argued in the reexamination proceeding that Lichtenstein failed to teach the “means for delivering the dialy-sate” required by claim 26, id. at *14, nor that Thompson failed to teach claim 30’s “means for delivering an anticoagulant,” id. at *15, even though those were the very elements of the claims that Baxter had successfully argued were missing from the prior art in the district court infringement litigation.
After the Board denied rehearing, Baxter appealed to this court. We affirmed the PTO’s determination that the rejected claims would have been obvious over the prior art. See In re Baxter, 678 F.3d at 1366. We explained that this determination was not inconsistent with our holding in the infringement litigation because, unlike the district court in the infringement litigation, the examiner “sufficiently identified the corresponding structure recited in [claim 26 of] the '434 patent,” i.e., the means for delivering the dialysate, and could “identify] the structures in the prior art” that would have rendered the asserted claims unpatentable. Id. at 1364-65. Furthermore, the examiner “based [the] rejections on prior art references that were not squarely at issue during the trial on the invalidity issues, such as Lichtenstein and Thompson.” Id. at 1365. Rehearing en banc was denied, In re Baxter Int’l, Inc., 698 F.3d 1349 (Fed.Cir.2012), our mandate issued on November 2, 2012, and Baxter did not petition for certiorari. The PTO terminated the reexamination and issued a certificate cancelling claims 26-31 of the '434 patent. See Ex Parte Reexamination Certificate, U.S. Pat. No. 5,247,434 C1 (P.T.O. Apr. 30, 2013).
Ill
At various points in the district court infringement litigation, the district court declined to stay the litigation pending the PTO reexamination. In June of 2007, the district court recognized the potential impact of the PTO proceedings on the infringement suit, acknowledging “that the PTO has already made initial, non-final determinations that the subject claims in the patents-in-suit are invalid,” J.A. 1015, and stating that “if all the claims are invalidated, as the PTO’s initial non-final determinations might imply, there will be no issues to try,” J.A. 1012. However, the district court concluded that “it is also possible that the PTO’s [initial] determination will have no ultimate bearing on the damages determination in this case, as the PTO’s initial actions were non-final and non-binding, and the PTO is free to reconsider its initial determinations.” Id. Because it was possible that the examiner’s determination would change by the time it became final, the district court denied a stay. J.A. 1015. In 2011, the district court again denied a stay, for similar reasons. See Fresenius, 2011 WL 2160609, at *1 (“[T]he effect on this litigation of any final action on the reexamined '434 patent is far from clear.”).
*1336 The issue became central when the district court entered final judgment for Baxter on March 16, 2012, while Baxter’s appeal of the PTO’s reexamination decision was pending before us. On May 17, 2012, we affirmed the PTO’s rejection of the '484 patent’s claims in In re Baxter. In the present appeal, the parties dispute the effect of the PTO’s cancellation of those claims on the infringement litigation, as well as issues related to damages.
We have jurisdiction under 28 U.S.C. § 1295(a)(1).
DISCUSSION
As noted earlier, the question in this case is whether, under the reexamination statute, the cancellation of claims by the PTO is binding in pending district court infringement litigation.
I
To understand the scope of the relatively recent statutory grant of reexamination authority, it is useful to first review the history and scope of the PTO’s reissue authority. This is so because the reexamination statute provides that reexamined claims “have the same effect [in pending litigation] as that specified in § 252 of this title for reissued patents.” 35 U.S.C. § 307(b).
The reissue statute, originally enacted in 1832, codified the Supreme Court’s holding that even in the absence of a statutory provision authorizing reissue, where an innocent mistake had been made in granting a patent, “[a]ll would admit that a new patent, correcting the error, ... ought to be issued.” Grant v. Raymond, 31 U.S. 218, 242, 6 Pet. 218, 8 L.Ed. 376 (1832). In the course of the reissue proceeding, “the Patent Office [i]s authorized to deal with all [the patent’s] claims ... and might declare them to be invalid.” McCormick Harvesting Mach. Co. v. C. Aultman & Co., 169 U.S. 606, 612, 18 S.Ct. 443, 42 L.Ed. 875 (1898). The patentee was required to surrender the original patent in order to obtain a reissued patent, and the original patent became inoperative.[5]
Prior to 1928, reissuance of a patent extinguished all pending claims based on that patent, because the original patent was “thereby canceled in law.” See II Anthony W. Deller, Walker on Patents § 319 (1937). Supreme Court decisions construing the reissue statute “uniformly held that if a reissue is granted, the paten-tee has no rights except such as grow out of the reissued patent. He has none under the original. That is extinguished.” Peck v. Collins, 103 U.S. 660, 664, 26 L.Ed. 512 (1880). Moreover, it was well-established that when a claim was canceled pursuant to reissue, pending suits based on that claim fell. Moffitt v. Garr, 66 U.S. 273, 283, 1 Black 273, 17 L.Ed. 207 (1861). As explained in Moffitt,
in case of a surrender and reissue, ... the pending suits fall with the surrender. A surrender of the patent to the Commissioner within the sense of the provision, means an act which, in judgment of law, extinguishes the patent. It is a legal cancellation of it, and hence *1337 can no more be the foundation for the assertion of a right after the surrender, than could an act of Congress which has been repealed. It has frequently been determined that suits pending, which rest upon an act of Congress, fall with the repeal of it. The reissue of the patent has no connection with or bearing upon antecedent suits; it has as to subsequent suits. The antecedent suits depend upon the patent existing at the time they were commenced, and unless it exists, and is in force at the time of trial and judgment, the suits fail.
Id. (emphasis added).[6] Thus, under the pre-1928 statute, “[t]he grant of a reissue extinguished all causes of action which had arisen under the original patent.” P.J. Federico, Intervening Rights in Patent Reissues, 30 Geo. Wash. L.Rev. 603, 604-OS (1962); see also Abercrombie & Fitch Co. v. Baldwin, 245 U.S. 198, 209-10, 38 5.Ct. 104, 62 L.Ed. 240 (1917) (upon reis-suance, a “patentee los[t] all in the way of an accounting under the original patent”); II Anthony W. Deller, Walker on Patents § 319 (1937) (stating that, prior to 1928, “no damages or profits could ordinarily be recovered, for any infringement of a surrendered patent committed prior to its cancellation”).
In 1928, Congress crafted an exception to the rule that “all rights [a patentee] had in and under the original patent are forfeited ab initio upon the grant of the reissue.” S.Rep. No. 70-567, at 1 (1928). Congress amended the reissue statute to authorize actions for infringement of the original claims to continue after reissue, but only “to the extent that [the reissued patent’s] claims are substantially identical with the original patent.” See Pub.L. No. 501, 45 Stat. 732, 732 (codified at 35 U.S.C. § 64 (1928)). The Senate Report accompanying the 1928 amendment explained that this change was meant
simply to correct an almost unbelievable and inequitable situation. Under the present law if a patentee applies for a reissue, no matter for what purpose, all rights he had in and under the original patent are forfeited ab initio upon the grant of the reissue.
S.Rep. No. 70-567, at 1 (1928); see also H.R.Rep. No. 70-1435, at 1-2 (1928) (similar).
As a result of the 1928 amendment, the reissue statute now states in relevant part,
every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and *1338 reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.
35 U.S.C. § 252 (emphasis added). Thus, while
[p]rior to 1928 one could not recover for past infringement of a reissued patent, even if the claims were unchanged.... the 1928 amendment expressly overruled this interpretation, and authorized the reissue of patents to correct errors while enabling recovery for past infringement of claims “identical” to those in the original patent.
Slimfold Mfg. Co. v. Kinkead Indus., Inc., 810 F.2d 1113, 1115 (Fed.Cir.1987).
But the 1928 amendment did nothing to change the rule that suits based on cancelled claims must be dismissed. Upon reissue, original claims that are not reissued in identical form became unenforceable. See Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 976 (Fed.Cir.1986) (“[T]he patentee has no rights [in a non-identical claim] to enforce before the date of reissue because the original patent was surrendered and is dead.”); Seattle Box Co. v. Indus. Crating & Packing, Inc., 731 F.2d 818, 827 (Fed.Cir.1984) (“The statute does not allow the claims of the original patent some other form of survival. The original claims are dead.”). It follows that “[s]urrender of the original patent does not affect any pending action or abate any cause of action to, the extent, but only to the extent, that the claims of the original and reissue patents are identical.” 4A Donald S. Chisum, Chisum on Patents § 15.05 (2013) (emphasis added).
II
Under the reissue statute, the PTO “had no power to revoke, cancel, or annul” a previously issued patent unless a reissue proceeding had been initiated by the pat-entee. McCormick, 169 U.S. at 612, 18 S.Ct. 443; see also Patlex Corp. v. Mossinghoff 758 F.2d 594, 601 (Fed.Cir.1985). In 1980, Congress authorized ex parte reexamination to address this deficiency in the reissue statute. See Patent Act of 1980, Pub.L. No. 96-517, 94 Stat. 3015 (1980) (codified as amended at 35 U.S.C. §§ 301-307). Like reissuance, ex parte reexamination is a curative proceeding meant to correct or eliminate erroneously granted patents. See In re Etter, 756 F.2d 852, 858 (Fed.Cir.1985) (en banc); see also In re Freeman, 30 F.3d 1459, 1468 (Fed.Cir.1994). Congress subsequently enacted additional provisions authorizing the PTO to conduct inter parties reexaminations, and more recently, inter partes review. See Abbott Labs. v. Cordis Corp., 710 F.3d 1318, 1325 (Fed.Cir.2013) (discussing inter partes reexamination and inter partes review); Leahy-Smith America Invents Act (“AIA”), Pub.L. No. 112-29, § 6(a), 125 Stat. 284, 299-304 (2011) (to be codified at 35 U.S.C. §§ 311-319).
The reexamination statute thus authorized the PTO to reconsider patents of “doubtful” validity, and to cancel “defectively examined and therefore erroneously granted patent[s].” Patlex, 758 F.2d at 602, 604; see also In re Swanson, 540 F.3d 1368, 1378 (Fed.Cir.2008) (describing “Congress’ purpose of allowing for a reexamination procedure to correct examiner errors”).
*1339 When a claim is determined to be invalid in reexamination, the reexamination statute requires the Director of the PTO to cancel a claim that is “finally determined to be unpatentable”:
In a reexamination proceeding under this chapter, when the time for appeal has expired or any appeal proceeding has terminated, the Director will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable.
35 U.S.C. § 307(a) (emphasis added); see also 35 U.S.C. § 306 (providing patentees with appeal rights from any PTO reexamination “decision adverse to the patentability” of one or more claims).
Even if the claim is amended during reexamination to render the claim valid, no suit can be maintained for the period prior to the validating amendment. To ensure that “a person practicing a patented invention would not be considered an infringer for the period between issuance of an invalid patent and its conversion through reexamination to a valid patent,” H.R.Rep. No. 96-1307, at 8 (1980), 1980 U.S.C.C.A.N. 6460, 6467, Congress made section 252, which limits the enforcement of reissued claims, applicable to reexamined claims. See id. It did so by enacting section 307(b) of the reexamination statute, which provides that
[a]ny proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 [35 U.S.C. § 252] for reissued patents on the right of any person who [infringed] anything patented by such proposed amended or new claim, ... prior to issuance of a [reexamination] certificate.
35 U.S.C. § 307(b) (emphasis added).
We have accordingly many times held that the reexamination statute restricts a patentee’s ability to enforce the patent’s original claims to those claims that survive reexamination in “identical” form. See, e.g., Bloom Eng’g Co. v. N. Am. Mfg. Co., 129 F.3d 1247, 1250 (Fed.Cir.1997) (“Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate.”); Tennant Co. v. Hako Minuteman, Inc., 878 F.2d 1413, 1417 (Fed.Cir.1989) (similar); Portel Corp. v. Phone-Mate, Inc., 825 F.2d 1577, 1581 (Fed.Cir.1987) (similar).
As with the reissue statute, the language and legislative history of the reexamination statute show that Congress expected reexamination to take place concurrent with litigation, and that cancellation of claims during reexamination would be binding in concurrent infringement litigation.[7] In Slip Track Systems, Inc. v. Metal Lite, Inc., for example, we concluded that the cancellation of claims during reexamination would preclude maintenance *1340 of a stayed interference suit involving the same claims. 159 F.3d 1337 (Fed.Cir. 1998). We explained that
the reexamination, if carried to completion, is likely to result in the cancellation of all of the claims of [Slip Track’s] patent [over the interfering patent]. That in turn will require a dismissal of the interfering patents suit, since a necessary condition for such an action is the existence of two valid and interfering patents.
Id. at 1340 (emphasis added). Likewise, in a stayed infringement proceeding, “if the [patentee’s] claims were canceled in the reexamination, [it] would eliminate the need to try the infringement issue.” Id. at 1342. In either situation, “a necessary condition for such an action is the existence of [a] valid ... patentf ].” Id. at 1340; see also Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed.Cir.1983) (noting that “[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled)”). This effect of the cancellation of a patent pursuant to the statute is “no insult to ... Article III.” See Patlex, 758 F.2d at 604. In sum, under either the reissue or reexamination statute, if the PTO confirms the original claim in identical form, a suit based on that claim may continue, but if the original claim is cancelled or amended to cure invalidity, the patentee’s cause of action is extinguished and the suit fails.
Ill
Baxter wisely agrees that in general, when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot. However, Baxter argues that the cancellation of the asserted claims cannot be given effect at this point in the present litigation, because the validity of the '434 patent and Fresenius’ liability for infringement of that patent were conclusively decided in 2007. Baxter argues that the district court’s 2007 judgment is “final” and “binding” on the parties in this case, and therefore has res judicata effect within the pending litigation: “the liability determination and Past Damages Award are now final and Fresen-ius is precluded from relitigating those issues.” Appellee’s Br. 19.
Baxter is correct that under “well-established principles of res judicata,” see In re Baxter, 698 F.3d at 1350-51 (Fed.Cir.2012) (O’Malley, J., concurring in denial of rehearing en banc), the cancellation of a patent’s claims cannot be used to reopen a final damages judgment ending a suit based on those claims. As the Supreme Court’s decision in Mojfitt made clear, “[i]t is a mistake to suppose ... that ... moneys recovered on judgments in suits ... might be recovered back [after a patent is cancelled]. The title to these moneys does not depend upon the patent, but upon ... the judgment of the court.” 66 U.S. at 283; see also In re Swanson, 540 F.3d at 1379 n. 5 (observing that “an attempt to reopen a final federal court judgment of infringement on the basis of a reexamination finding of invalidity might raise constitutional problems”).[8] Fresenius does not argue otherwise.
It is important here to distinguish between different concepts of finality. “Defi- *1341 rations of finality cannot automatically be carried over from appeals cases to preclusion problems.” See 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4482 (2d ed.2002). We are also not dealing with finality for purposes of determining the potential res judicata effect of this infringement litigation on another suit. We are concerned instead with whether the judgment in this infringement case is sufficiently final so that it is immune to the effect of the final judgment in the PTO proceedings, as affirmed by this court in In re Baxter.
In this case, there is no question of reopening a final court judgment, because no such judgment has been entered. To be sure, the district court entered a judgment in November of 2007. But while the district court in 2007 entered a judgment final for purposes of appeal, and that judgment might have been given preclusive effect in another infringement case between these parties, it was not sufficiently final to preclude application of the intervening final judgment in In re Baxter, and in any event, we set the district court’s judgment aside in the first appeal in the infringement case.[9] See Fresenius I, 582 F.3d at 1302-03.
It is also clear that our remand decision in Fresenius I was not sufficiently final to prevent the application of In re Baxter in the pending suit. “To rise to that level, the litigation must be entirely concluded so that [the] cause of action [against the in-fringer] was merged into a final judgment ... one that ‘ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.’ ” Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1580 (1994) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). Our remand to the district court in Fresenius I did not end the controversy between the parties, or leave “nothing for the court to do but execute the judgment.” To the contrary, we left several aspects of the district court’s original judgment unresolved, including royalties on infringing machines, royalties on related disposables, and in-junctive relief. Looking to general res judicata principles governing the preclu-sive effect of a judgment, it is well-established that where the scope of relief remains to be determined, there is no final judgment binding the parties (or the court):
Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, or if the court has decided that the plaintiff should have relief against the defendant of the claim but the amount of the damages, or the form or scope of other relief, remains to be determined.
Restatement (Second) of Judgments § 13(b) .(1982) (emphases added). “An order that establishes. liability but leaves *1342 open the question of damages or other remedies ... [is] not final for purposes of preclusion under traditional analysis.” 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4432 (emphasis added) (2d ed.2002) (citing G. & G. Merriam Co. v. Saalfield, 241 U.S. 22, 28, 29, 36 S.Ct. 477, 60 L.Ed. 868 (1916)). “Reversal and remand for further proceedings on the entire case defeats preclusion entirely until a new final judgment is entered by the trial court or the initial judgment is restored by further appellate proceedings.” Id.
Nor does the existence of an interim appellate decision on invalidity change the basic rule. The Supreme Court’s decision in Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922), demonstrates that the district court must apply intervening legal developments affecting the asserted patent’s validity, even if the court of appeals already decided the validity issue the other way. There, the Third Circuit reversed a district court finding of infringement. Id. at 84, 42 S.Ct. 196. The Third Circuit held that the patentee’s claim was invalid because it had been improperly broadened on reissue. Id. The appellate mandate instructed the district court to modify its decree in accordance with the decision on appeal, and to award costs to the infringer. Id. The suit remained pending in the district court for an accounting of damages for unfair competition. While the case was pending, the Supreme Court held in another case involving the same patent, “in direct opposition to the decision of the [Third] Circuit,” that the reissued claim was not invalid, because it had not been broadened on reissue. Id. at 85, 42 S.Ct. 196. In light of this intervening decision, the district court vacated the invalidity judgment it had entered based on the Third Circuit’s decision and awarded the patentee damages and an injunction. Id. at 86, 42 S.Ct. 196. But the Third Circuit reversed, holding that the intervening Supreme Court decision did not affect the patentee’s rights. Id. at 87, 42 S.Ct. 196. The Supreme Court reversed the Third Circuit, holding that the Third Circuit had no basis for refusing to give effect to its intervening decision on the claim’s validity, because the appellate mandate had not ended the case. Id. at 91, 42 S.Ct. 196. The Supreme Court explained,
[t]he decree entered pursuant to the decision of the appellate court ... evidenced a quasi-definitive decision adverse to plaintiffs, which, if nothing occurred to prevent, would in due course be carried into the final decree. But ... there was nothing to take the case out of the ordinary rule that there can be but one final decree in a suit in equity.
Id. at 89, 42 S.Ct. 196. “[A] final decree [is] one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it.” Id. at 88, 42 S.Ct. 196. Because “[t]he suit was still pending ... [i]t was eminently proper that the decree in the present suit should be made to conform to [the intervening Supreme Court] decision.” Id. at 91, 42 S.Ct. 196; see also Marconi Wireless Tel. Co. v. United States, 320 U.S. 1, 47-48, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943) (“Although the interlocutory decision of [the trial court] on the question of validity and infringement was appealable, ... the decision was not final until the conclusion of the accounting. Hence the court did not lack power at any time prior to entry of its final judgment at the close of the accounting to reconsider any portion of its decision and reopen any part of the case.” (internal *1343 citations omitted)). Thus, in Simmons, even though there had been an appellate decision entirely resolving the patent infringement claims, because there had not yet been a final judgment on the unfair competition claims, the Supreme Court’s intervening decision was binding as to the infringement claims.
In Simmons, it was the patentee who benefited from the lack of finality, but the same rule applies when the beneficiary is the alleged infringer. Our decision in Mendenhall, 26 F.3d 1573, is on point, and is directly inconsistent with Baxter’s argument. Mendenhall holds that a decision finding a patent not invalid but remanding for further damages proceedings is not a final judgment. In that case Mendenhall had asserted its patents in concurrent suits against two alleged infringers, Cedarapids and Astee. Id. at 1576-77. The Astee litigation produced a verdict that the patents were not invalid, which this court affirmed on appeal, but we remanded “for determination of damages and other issues.” Id. at 1576. While Astee was pending on remand, the asserted patents were ruled invalid by the district court in the concurrent Cedarapids suit. Id. at 1577. On appeal in that suit, we “finally adjudged invalid” all asserted claims of both patents; certiorari was denied. Id.
When we invalidated the patents in Ce-darapids, the Astee case was still pending before the district court for the determination of damages and other issues. Astee moved to vacate the unfavorable liability judgment in district court, but the district court denied the motion. On appeal from the Astee litigation, Astee argued that the Cedarapids decision barred Mendenhall from recovering for infringement, because its patents had been invalidated. Id. at 1580. Mendenhall argued that we could not give effect to Cedarapids’ intervening invalidation of the patents, because doing so would conflict with our affirmance and appellate mandate in the first Astee appeal. Id.
We agreed with Astee and disagreed with Mendenhall. First, we observed that the issue on appeal was not whether the panel decision in Astee “should be overturned,” but whether Astee could assert a “defense which arose subsequently,” that is, that Mendenhall’s patents were legally unenforceable. Id. We explained that the subsequent invalidation of the asserted patents was a distinct issue not yet considered on appeal, and that our prior mandate in Astee
did not rule that the patents were “valid” ... but rather ruled that Astee failed to establish the merits of its defenses.... Thus, this court did not “overturn” its prior Astee rulings respecting validity by the Cedarapids judgment of invalidity, and it does not do so here by recognizing the overriding defense of collateral estoppel.

Id.

We then rejected Mendenhall’s contention that “proceedings here are too far advanced for redetermination of liability.” Id. We held that because there had been no final judgment in the Astee case, we were not barred from applying the Cedar-apids judgment to the pending appeal:
the judgment of this court on liability in Astee resulted in a remand for further proceedings. It was not the final judgment in the case. To rise to that level, the litigation must be entirely concluded so that Mendenhall’s cause of action against Astee was merged into a final judgment.
Id. (citing Restatement (Second) of Judgments § 13 (1982)). The invalidation of *1344 the asserted patent in the concurrent Ce-darapids litigation represented “intervening controlling authority,” 26 F.3d at 1583, giving Astee an “overriding defense” that the asserted patents were invalid and unenforceable. Id. at 1580. In light of that development,
[f]or this court to affirm the findings of infringement and the willfulness of conduct against one appellant, increase damages against the other, and uphold injunctions against both, appears anomalous in the extreme in connection with patents this court has just held invalid.
Id. at 1578. We concluded that “[bjecause the Mendenhall patents are invalid, the plaintiffs cannot now enjoin or recover damages from these defendants. The liability judgments together with the awards of damages and the permanent injunctions ... are reversed.” Id. at 1584.
This case is virtually identical to Men-denhall. The intervening decision invalidating the patents unquestionably applies in the present litigation, because the judgment in this litigation was not final.[10]
Baxter, however, seeks to distinguish Mendenhall on the grounds that the first Mendenhall appeal was taken as an interlocutory appeal under section 1292(c)(2), whereas the first appeal here was taken under section 1295, which provides for appeals from “final” judgments. See 28 U.S.C. § 1292(c)(2) (authorizing interlocutory appeals of final judgments in patent cases); 28 U.S.C. § 1295 (authorizing appeals from “final” judgments). But nothing in Mendenhall suggests that the statutory basis for the first appeal controlled whether it would be given res judicata effect within the continuing litigation. To the contrary, the point made in Menden-hall was that because there had been no final judgment for res judicata purposes, the patentee was improperly “attempting to invoke a novel kind of res judicata within a case.” 26 F.3d at 1580-81.
Baxter also argues that Mendenhall’s holding should apply only where the patent has been invalidated by a district court. Baxter argues that because different standards apply in a PTO reexamination and a validity proceeding before the district court, the patent’s invalidation in a reexamination does not have collateral estoppel effect. But there is no basis for distinguishing between the effects of a final, affirmed court decision determining invalidity and a final, affirmed PTO decision determining invalidity on a pending litigation. The latter is binding not because of collateral estoppel, but because Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent.
Under Baxter’s different standards theory, the cancellation of claims by the PTO could never affect district court litigation, contrary to the statute. As the Supreme Court held in Moffitt, “unless [a patent] exists, and is in force at the time of trial and judgment, the suits fail.” 66 U.S. at 283. Baxter’s problem is that it no longer *1345 has a viable cause of action in the pending case.
IV
Baxter next argues that under Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), allowing a PTO determination to control the outcome of pending litigation is unconstitutional, because it offends the separation of powers. But Plaut lends no support to such an assertion where, as here, the suit is not over and there has been no final judgment.
In Plaut, the Supreme Court made clear that the power to issue a final judgment and thereby conclusively resolve a case resides in the judicial branch; coordinate branches cannot retroactively compel a case to be reopened. Id. at 218-19, 115 S.Ct. 1447. But Plaut also unambiguously stated that
[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly.
Id. at 226, 115 S.Ct. 1447 (emphasis added). Plaut thus recognized “[t]he general rule ... that an appellate court must apply the law in effect at the time it renders its decision,” Thorpe v. Hous. Auth. of the City of Durham, 393 U.S. 268, 281, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), which is the principle that controls here.[11] The Supreme Court has held that this reasoning applies “where the change [i]s constitutional, statutory, or judicial,” because the general principle “applies with equal force where the change is made by an administrative agency acting pursuant to legislative authorization.” Thorpe, 393 U.S. at 282, 89 S.Ct. 518 (remanding for the application of new rules issued by HUD while the case was pending before the Court). Our decisions giving effect to the PTO’s cancellation of claims asserted in pending suits are fully consistent with our duty to “apply the law in effect at the time [we] render[ a] decision.” Bradley, 416 U.S. at 711, 94 S.Ct. 2006. The general principle stated in Moffitt, Thorpe, and Plaut controls regardless of whether the plaintiffs cause of action is “extinguished” by the repeal of a statute or by the PTO’s cancellation of a claim pursuant to reexamination. Moffitt invoked this very principle to explain why pending suits based on can-celled claims must fall:
[a cancelled patent] can no more be the foundation for the assertion of a right after [its] surrender, than could an act of Congress which has been repealed.... [U]nless it exists, and is in force at the time of trial and judgment, the suits fail.
66 U.S. at 283.
It is also quite clear that we have not reached the stage at which Plaut pre- *1346 eludes reopening a case. We have held that a new statute enacted even after a final decision on appeal is applicable in a pending case, so long as our mandate ending the litigation has not yet issued. GPX Int’l Tire Corp. v. United States, 678 F.3d 1308, 1312 (Fed.Cir.2012) (“Unlike Plant, where Congress attempted to undo a final judgment, this case [i]s still pending on appeal, ... our mandate ha[s] not yet issued.” (internal citations omitted)).[12] Our sister circuits have done likewise. See, e.g., Bryant v. Ford Motor Co., 886 F.2d 1526, 1528-31 (9th Cir.1989) (vacating a prior mandate in light of superseding legislation, where the current mandate had not yet issued); T.S. Alphin and Alphin Aircraft, Inc. v. Henson, 552 F.2d 1033, 1034-35 (4th Cir.1977) (similar). There is no basis to read Plaut to impose restrictions on reopening before there has been a final judgment ending the case, that is, “a judicial decision [that] becomes the last word of the judicial department with regard to a particular case or controversy.” Plant, 514 U.S. at 227, 115 S.Ct. 1447.
Finally, Baxter argues that giving effect to the cancellation in this suit gives the reexamination statute an improperly “retroactive” effect on the enforceability of its patent. According to Baxter, “[i]f Congress intended for affirmed determinations of validity to be set aside ... it would have drafted the reexamination statute to provide for such a result.” Appellee’s Br. 24. But it could hardly be clearer that Congress meant for cancellation to terminate pending suits. When it amended the pertinent statutory language in 1928, Congress acknowledged that cancelled claims were void ab initio. It did not overrule the application of that principle to can-celled claims, but rather modified the rule to allow continuation of pending suits under circumstances inapplicable here. And in 1980, it made that provision applicable to reexamination.
V
In closing, it is appropriate to say a few words about the dissent, which reiterates a view, expressed by Judge Newman in various other cases, that PTO reexamination cannot affect pending infringement suits. The dissent candidly acknowledges that this position has been consistently rejected.[13] As discussed above, the statute requires that a final PTO decision affirmed by this court be given effect in pending infringement cases that are not yet final. Baxter, as a general matter, does not argue otherwise. The dissent’s claim that the earlier judgment in Fresenius I is a *1347 final, binding judgment for purposes of res judicata is incorrect, as discussed at length earlier in this opinion.
The dissent, however, cites the Restatement (Second) of Judgments and various cases recognizing that even an interim court decision can have collateral estoppel effect (though it does not operate as res judicata, that is, claim preclusion). The argument appears to be that the PTO was barred from invalidating the claims during reexamination (and that we were in turn barred from affirming the PTO’s determination) because the PTO was bound by collateral estoppel arising from the interim decision in Fresenius I, which had found the asserted claims not invalid. This identical argument was considered and (properly) rejected in In re Baxter. See 678 F.3d at 1365; see also, e.g., Ethicon, 849 F.2d at 1429 n. 3 (holding that “[t]he doctrine of collateral estoppel does not prevent the PTO from completing the reexamination,” if a district court finds the patent not invalid).
The argument has even less merit here. Even if collateral estoppel were implicated, both the Restatement and numerous cases have held that an interim decision in one suit (here, Fresenius I) cannot prevail over a final judgment on the same issue in another suit (here, In re Baxter). See Restatement (Second) of Judgments, §§ 14, 27 (1982).[14] That is the explicit teaching of the Supreme Court’s decision in Simmons, and our decision in Menden-hall, discussed earlier. There is no basis for departing from that established rule.
In light of the cancellation of Baxter’s remaining claims, Baxter no longer has a viable cause of action against Fresenius. Therefore, the pending litigation is moot. We vacate the district court’s judgment and remand with instructions to dismiss.
VACATED AND REMANDED
Costs
Costs to Fresenius.

. The original complaint included two additional Baxter patents, U.S. Patent No. 5,326,-476 ("the '476 patent") and U.S. Patent No. 5,486,286 ("the '286 patent”). The Court dismissed all claims concerning the '286 patent in 2006. Baxter dismissed the '476 patent claims from the suit prior to the damages trial.

. Fresenius appealed certain of the district court's claim constructions, its grant of JMOL of invalidity, the entry of the permanent injunction, and the royalty award. Baxter cross-appealed the jury's verdict that the claims of the '027 patent, not relevant here, were anticipated. Fresenius I, 582 F.3d at 1294.

. For example, the examiner concluded that "it would have been prima facie obvious ... to have modified the ... dialysis machine of Lichtenstein, to utilize a touch screen ... for delivery of treated or treatment fluids to a patient,” and found that "Lichtenstein further evidences that the [prior art machines] are standard variations” on medical devices of the claimed type. Final Office Action in Ex Parte Reexamination, U.S. Pat. No. 5,247,434 (P.T.O. Dec. 14, 2007), at 8, 9.

. Lichtenstein was not presented to the district court in relation to claim 26's "means for delivering dialysate,” and the district court’s analysis of claim 26 did not discuss *1335 Lichtenstein. See Fresenius, 2007 WL 518804, at *7-8. Thompson was apparently never presented to the district court at all.

. The first version of the reissue statute provided that an original patent was surrendered and canceled upon application for reissue. See generally McCormick, 169 U.S. 606, 18 S.Ct. 443. The statute was revised in 1870 to provide that surrender and cancellation took place upon completion of the reissue proceeding. See id. at 610-12, 18 S.Ct. 443 (holding that if a reissue application is rejected or abandoned, the original claims are not extinguished).

. The Supreme Court repeatedly applied the Moffitt rule after the 1870 statutoiy amendment mentioned in note 5, supra. See Allen v. Culp, 166 U.S. 501, 505, 17 S.Ct. 644, 41 L.Ed. 1093 (1897) (holding that the original patent "becomes inoperative” on reissue); Reedy v. Scott, 90 U.S. 352, 364, 23 Wall. 352, 23 L.Ed. 109 (1874) ("[T]he effect of the surrender is to extinguish the patent, and hence it can no more be the foundation for the assertion of a right than can a legislative act which has been repealed without any saving clause of pending actions.”). In Meyer v. Pritchard, 131 U.S. App’x CCIX (1877), the Supreme Court held that the cancellation of a patent mooted the appeal:
[s]ince the appeal in this case, the appellants ... have surrendered the patent upon which the suit was brought.... If we should hear the case and reverse the decree below, we could not decree affirmative relief to the appellants ... because the patent upon which their rights depend has been cancelled. There is no longer any "real or substantial controversy between those who appear as parties to the suit” upon the issues which have been joined, and for that reason the appeal is dismissed.

. See generally Mark D. Janis, Rethinking Reexamination: Toward a Viable Administrative Revocation System for U.S. Patent Law, 11 Harv. J.L. & Tech. 1, 82 (1997) (‘‘[A] final decision in a reexamination striking down claims binds courts in pending and future litigation.”); see also Steven M. Auvil, Note, Staying Patent Validity Litigation Pending Reexamination: When Should Courts Endeavor To Do So?, 41 Clev. St L.Rev. 315, 326-37 (1993) (discussing the effect of cancellation, which "renders the claims unenforceable in the pending litigation” (i.e., in concurrent district court suits)).

. As previously stated in In re Construction Equipment Co., 665 F.3d 1254, 1256 n. 2 (Fed.Cir.2011), ''[w]e express no opinion on whether [an infringer] might or might not be entitled to seek abrogation of [an] injunction” after the underlying patent has been can-celled.

. The district court repeatedly and correctly rejected Baxter’s post-remand arguments that the November 7, 2007 judgment was final and enforceable. The court refused to authorize execution of the 2007 judgment after remand, denying Baxter’s motion to confirm that the 2007 judgment on damages was "final and immediately enforceable,” and stating that "there is presently no effective final judgment.” Fresenius USA, Inc. v. Baxter, Int’l, Inc., No. 03-CV-1431 (N.D.Cal. Sept. 20, 2011), ECF No. 1117. In 2012, the district court again refused to authorize execution of the 2007 judgment, stating that it was no longer effective and had been superseded. See Fresenius Med. Care Holdings, Inc. v. Baxter, Int’l, Inc., No. 03-CV1431 (N.D.Cal. May 3, 2012), ECF No. 1157. .

. See also Luminous Unit Co. v. Freeman-Sweet Co., 3 F.2d 577, 579-80 (7th Cir.1924) (holding that a district court had to give effect to a cancellation that became effective after the district court entered a decree for the patentee on validity and infringement, but before the entry of final judgment in the suit); Translogic Tech., Inc. v. Hitachi, Ltd., 250 Fed.Appx. 988 (Fed.Cir.2007) (nonpreceden-tial) (reversing district court judgment in favor of the patentee, and remanding for dismissal, in light of our affirmance of the PTO's determination that the claims were invalid).

. See also Harper v. Va. Dep't of Taxation, 509 U.S. 86, 97, 113 S.Ct 2510, 125 L.Ed.2d 74 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.”); Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (when a case is pending on review "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary”); id. at 713 n. 17, 94 S.Ct. 2006; Thorpe, 393 U.S. at 282, 89 S.Ct. 518; United States v. Schooner Peggy, 1 Cranch 103, 110, 2 L.Ed. 49 (1801).

. Baxter cites QUALCOMM, Inc. v. FCC, 181 F.3d 1370, 1380 (D.C.Cir.l999), for the proposition that a court cannot “reconsider its prior affirmed judgment based on a change in law, even though, like here, the [QUAL-COMM] case was remanded on a remedy issue.” Appellee’s Suppl. Auth. 1. But QUAL-COMM involved very different circumstances: in that case, the appellate mandate in question was "not simply 'for further proceedings,' ” but ordered specific, immediate relief for a party, that is, the judiciary had entered "a final judgment entitling QUALCOMM to a preference.” 181 F.3d at 1380 n. 7. Because of the finality of the earlier decision, and the legislative history of the intervening legislation, the legislation was construed to be inapplicable.

. See Dissent at 1353-54; In re Baxter, 698 F.3d at 1351 (Newman, J., dissenting from denial of rehearing en banc); In re Construction, 665 F.3d at 1257 (Newman, J., dissenting); see also In re Swanson, 540 F.3d at 1377; Ethicon, Inc., v. Quigg, 849 F.2d 1422, 1429 n. 3 (Fed.Cir.1988) (“[A] court's decision upholding a patent’s validity is not ordinarily binding on another challenge to the patent's validity, in either the courts or the PTO.” (internal citations omitted)).

. Indeed, even where two final court judgments conflict, the settled rule is that the later judgment, not the earlier, has preclusive force going forward. See Restatement (Second) of Judgments § 15 (1982) (Comment (b)); see also id. (Comment (c)) (stating that this rule “governs the effect of a judgment by way of merger, bar, or issue preclusion”); see generally Ruth B. Ginsburg, Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Judgments, 82 Harv. L.Rev. 798 (1969).