# United States Court of Appeals for the Federal Circuit

———————————

**PACKET INTELLIGENCE LLC,**
*Plaintiff-Appellee*

**v.**

**NETSCOUT SYSTEMS, INC., NETSCOUT SYSTEMS TEXAS, LLC, FKA TEKTRONIX TEXAS, LLC, DBA TEKTRONIX COMMUNICATIONS,**
*Defendants-Appellants*

———————————

**2022-2064**

———————————

Appeal from the United States District Court for the Eastern District of Texas in No. 2:16-cv-00230-JRG, Chief Judge J. Rodney Gilstrap.

———————————

Decided: May 2, 2024

———————————

PAUL SKIERMONT, Skiermont Derby LLP, Dallas, TX, argued for plaintiff-appellee. Also represented by ALEXANDER EDWARD GASSER, STEVEN WAYNE HARTSELL, SARAH ELIZABETH SPIRES; MIEKE K. MALMBERG, Los Angeles, CA.

MICHAEL JOHN LYONS, Morgan, Lewis & Bockius LLP, Palo Alto, CA, argued for defendants-appellants. Also represented by AHREN CHRISTIAN HSU-HOFFMAN, AUSTIN ZUCK; JASON D. FRANK, Boston, MA; JULIE S. GOLDEMBERG,

ERIC KRAEUTLER, Philadelphia, PA; WILLIAM R. PETERSON, Houston, TX.

————————————

Before LOURIE, HUGHES, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

NetScout Systems, Inc. and NetScout Systems Texas, LLC (collectively, "NetScout") appeal the amended final judgment entered by the U.S. District Court for the Eastern District of Texas ("Eastern District"), contending that the district court erred in granting enhanced damages for willful infringement and in setting the rate and effective date for an ongoing royalty. In view of the parallel appeals in which we have affirmed the final written decisions of the Patent Trial and Appeal Board ("Board") finding all of the patent claims asserted by Packet Intelligence LLC ("Packet") in this case invalid, we vacate the district court's amended final judgment and remand with instructions to dismiss the case as moot.

I

This case is before us for the second time. Previously, in 2020, we considered NetScout's appeal from the judgment of the Eastern District following a bench trial and jury verdict. The Eastern District had held: (1) NetScout willfully infringed claims 10 and 17 of U.S. Patent No. 6,665,725 ("'725 patent"), claims 1 and 5 of U.S. Patent No. 6,839,751 ("'751 patent"), and claims 19 and 20 of U.S. Patent No. 6,954,789 ("'789 patent"); (2) no asserted claim was shown to be unpatentable or invalid under 35 U.S.C. §§ 101, 102(a), or 102(f); and (3) Packet was entitled to (a) $3.5 million in pre-suit damages, (b) $2.25 million in post-suit damages, (c) $2.8 million in enhanced damages, and (d) an ongoing royalty of 1.55% for future infringement. In that first appeal, we "reverse[d] the district court's pre-suit damages award and vacate[d] the court's enhancement of that award." *Packet Intel. LLC v. NetScout Sys., Inc.*, 965

F.3d 1299, 1303 (Fed. Cir. 2020) ("*Packet I*"). We "affirm[ed] the district court's judgment in all other respects." *Id.* By mandate issued on October 23, 2020, we remanded the case to the Eastern District.

During the pendency of the remand, the Board issued final written decisions in *inter partes* reviews ("IPRs") initiated by third parties Juniper Networks, Inc. and Palo Alto Networks, Inc. Those final written decisions found all claims asserted in this case unpatentable as obvious. *See Juniper Networks, Inc. v. Packet Intel. LLC*, IPR2020-00336, 2021 Pat. App. LEXIS 5456 (P.T.A.B. Sept. 9, 2021) (considering '725 patent); *Juniper Networks, Inc. v. Packet Intel. LLC*, IPR2020-00338, 2021 Pat. App. LEXIS 5520 (P.T.A.B. Sept. 8, 2021) (considering '751 patent); *Juniper Networks, Inc. v. Packet Intel. LLC*, IPR2020-00339, 2021 Pat. App. LEXIS 5525 (P.T.A.B. Sept. 8, 2021) (considering '789 patent). Packet timely appealed the Board's final written decisions. We coordinated those appeals so they would be considered by the same panel deciding this appeal.

After the Board issued the final written decisions, NetScout moved in the Eastern District to dismiss Packet's infringement case against it or, in the alternative, to stay the district court litigation until the conclusion of Packet's appeal from the Board's final written decisions. Packet opposed the motion. At the time, the parties were already in the process of litigating the issues we remanded in *Packet I*, which related to enhanced damages and ongoing royalties.

On May 4, 2022, the district court denied NetScout's motion to dismiss or stay the case and entered an amended final judgment. The amended judgment was based on the district court's evaluation of the contested issues that were litigated on the remand from our mandate in *Packet I*. In particular, the court denied NetScout's request to reevaluate the factors it had originally considered in deciding to enhance damages, concluding that the mandate rule

precluded such reconsideration – and, in any event, that reconsideration would have resulted in the same decision to enhance post-suit damages. The district court's amended judgment also eliminated all pre-suit damages and retained the full $2.25 million in post-suit damages. It also reduced the enhanced damages from $2.8 million to approximately $1.1 million, a reduction in the same proportion as the reduction in compensatory damages (from the prior total of $5.75 million (i.e., $3.5 + $2.25 million) to the new amount of $2.25 million). Finally, the district court reset the ongoing royalty rate, dropping it from 1.55% to 1.355%, effective as of the date of the amended final judgment (May 4, 2022), rejecting NetScout's request to reduce it to 1.16% as well as Packet's preference that it remain at 1.55%.

On May 31, 2022, NetScout filed a motion pursuant to Federal Rule of Civil Procedure 59(e), seeking to make the effective date of the reduced ongoing royalty rate (1.355%) October 23, 2020, the date the *Packet I* mandate had issued. On June 21, 2022, the district court denied the motion, finding that NetScout had failed to sufficiently raise the effective date issue prior to the entry of the May 4, 2022 amended final judgment.

NetScout timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II

NetScout contends that if, in the co-pending appeals from the Board, we affirm the Board's findings that the claims asserted in this litigation are unpatentable, such affirmance would have "an immediate issue-preclusive effect," leaving Packet unable to "collect on an outstanding monetary damages award for patent infringement." Appellant's Br. at 13. In support of its position, NetScout cites several cases in which we vacated district court judgments of patent infringement after affirming intervening unpatentability findings from the United States Patent and

Trademark Office ("PTO"). *See, e.g.*, *VirnetX Inc. v. Apple Inc.*, 2023 WL 2770074, at \*1 (Fed. Cir. Mar. 31, 2023) ("*VirnetX II*"); *Chrimar Sys., Inc. v. ALE USA Inc.*, 785 F. App'x 854, 857-58 (Fed. Cir. 2019); *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1347 (Fed. Cir. 2013) ("*Fresenius II*"). In response, Packet attempts to distinguish these cases as arising in a different procedural posture than the one we confront here today. In Packet's view, the only issue we need to decide is whether our decision in *Packet I* rendered this case sufficiently final such that it is immune to the Board's subsequent determination of unpatentability.

While Packet has accurately characterized the issue presented, the answer it urges us to give is incorrect. Based on our precedents, including those cited by NetScout, Packet's infringement judgment was not final before the Board's unpatentability determinations were affirmed. We are, thus, compelled to order that Packet's patent infringement claims be dismissed as moot.

A

Our decision in *Fresenius II* is most instructive. There, Fresenius USA, Inc. and Fresenius Medical Care Holdings, Inc. (collectively, "Fresenius") brought a declaratory judgment action in the United States District Court for the Northern District of California ("Northern District") against Baxter International, Inc. and Baxter Healthcare Corp. (collectively, "Baxter"), alleging that claims of U.S. Patent No. 5,247,434 ("'434 patent") and two other patents were invalid and not infringed. *See Fresenius II*, 721 F.3d at 1331-32. Baxter counterclaimed for infringement. *See id.* at 1331. Following claim construction, Fresenius stipulated to infringement but continued to insist that the asserted claims were invalid. *See id.* at 1332. The Northern District then held a trial on invalidity, after which the jury returned a verdict in favor of Fresenius, finding all

asserted claims invalid. *See id.* The district court granted Baxter's motion for judgment as a matter of law ("JMOL") that some of its asserted claims, including those in the '434 patent, were not invalid. *See id.* at 1332-33. Following another jury trial on damages, the district court awarded Baxter pre-verdict damages of more than $14 million, as well as post-verdict royalties and a permanent injunction. *See id.* at 1333.

The parties then appealed to us. On appeal, we affirmed the Northern District's determination that the claims of the '434 patent were not invalid. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296-1302 (Fed. Cir. 2009) ("*Fresenius I*"). We also reversed the district court's determination that the claims of the other two patents were not invalid. Because we had concluded that two of the three patents asserted by Baxter were invalid, we vacated the district court's permanent injunction and royalty awards and remanded for reconsideration of these issues in light of our modification of the judgment. *See id.* at 1302-03.

On remand, the '434 patent expired, rendering the permanent injunction issue moot. *See Fresenius II*, 721 F.3d at 1333. Fresenius moved for a new trial on pre-verdict damages for infringement of the '434 patent, contending that a new trial was warranted "because the jury returned a single, generalized verdict covering all asserted claims from three Baxter patents." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 2011 WL 2160609, at *2 (N.D. Cal. May 26, 2011). The district court denied the motion, finding that "[n]othing in the mandate in this case indicates that damages for infringement was an issue for remand." *Id.* On March 16, 2012, the district court entered final judgment, awarding Baxter pre-verdict damages based on the original jury award and post-verdict damages at a reduced royalty rate. *See Fresenius II*, 721 F.3d at 1334.

While the district court litigation was ongoing, Fresenius requested *ex parte* reexamination of certain claims of the '434 patent, including those asserted by Baxter in the district court litigation. *See id.* The PTO examiner found the reexamined claims unpatentable as obvious, a determination that was later affirmed by the Board of Patent Appeals and Interferences, *see Ex Parte Baxter Int'l, Inc.*, No. 2009-006493, 2010 WL 1048980, at *1 (B.P.A.I. Mar. 18, 2010), and then by us, *see In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1358 (Fed. Cir. 2012). Our mandate issued on November 2, 2012, and Baxter did not petition for a writ of certiorari from the Supreme Court. *See Fresenius II*, 721 F.3d at 1335.

In the parties' second appeal from the Northern District, Fresenius challenged the pre-verdict damages award and Baxter challenged the post-verdict royalties. *See id.* at 1334. Fresenius also argued that Baxter no longer had a cause of action for infringement, "[i]n light of the cancellation of the asserted claims of the '434 patent, and the fact that the infringement suit remain[ed] pending before" our court. *Id.* at 1332.

We agreed with Fresenius. We vacated the district court's judgment and remanded with instructions to dismiss the case as moot. *See id.* In doing so, we rejected Baxter's argument that "the cancellation of the asserted claims cannot be given effect . . . because the validity of the '434 patent and Fresenius' liability for infringement of that patent were conclusively decided in 2007." *Id.* at 1340. It was Baxter's view that even before the first appeal, the district court's 2007 judgment was "final" and "binding" on the parties, thus having "res judicata effect within the pending litigation." *Id.*

In reaching our different conclusion, we emphasized the importance of "distinguish[ing] between different concepts of finality." *Id.* at 1340. We explained that we were "not dealing with finality for purposes of determining the

potential res judicata effect of this infringement litigation on another suit" but were "concerned instead with whether the judgment in this infringement case is sufficiently final so that it is immune to the effect of the final judgment in the PTO proceedings, as affirmed by this court." *Id.* at 1341. As to this latter concept of finality – which is the same concept of finality at issue here in NetScout's appeal – we held that in order for a judgment to be "sufficiently final to prevent the application of" an intervening unpatentability finding, "the litigation must be entirely concluded so that the cause of action against the infringer was merged into a final judgment [and is] one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id.* (internal alterations and quotation marks omitted).

B

Applying *Fresenius II* here leads inexorably to the conclusion that Packet's infringement case against NetScout remains pending and, thus, is not immune to the Board's now-affirmed findings of unpatentability. Our decision in *Packet I* plainly did not move this case to a stage that "leaves nothing for the court to do but execute the judgment." *Id.* Instead, we remanded for the district court to excise pre-suit damages and enhanced damages related to pre-suit damages. Even Packet cannot bring itself to say that our mandate in *Packet I* left "nothing for the court to do but execute the judgment." *Id.* In its recitation of the situation here, Packet writes that the *Packet I* mandate "left nothing for the district court to do *other than* to remove the pre-suit damages and any enhancement tied thereto." Appellee's Br. at 55 (emphasis added). This is self-evidently something more than "nothing . . . but execute the judgment." *Fresenius II*, 721 F.3d at 1341.

In *Fresenius II*, we held that a patent infringement judgment is immune to subsequent unpatentability findings only when that judgment "ends the litigation on the

merits and leaves nothing for the court to do but execute the judgment." 721 F.3d at 1341 (internal quotation marks omitted). Our remand in *Packet I* did not end the litigation on the merits. Instead, to comply with our remand, the district court was required to modify its original judgment to eliminate a portion of its compensatory damages award and to determine the impact of that elimination on the proper amount of enhanced damages. Again, this is something more than "nothing . . . but execute the judgment."[1] *Id.*

That this case was not, on remand from *Packet I*, "final" in the *Fresenius II* sense is further illustrated by the extensive litigation that occurred following our mandate. On remand, the Eastern District received voluminous briefing related to enhanced damages (as well as the ongoing royalty rate and NetScout's motion to dismiss or stay). The district court comprehensively analyzed the disputed issues presented to it. Eventually, and not unreasonably, the remand litigation lasted for more than 16 months. This amount of litigation is more than "nothing . . . but execute the judgment." *Id.*

The remand also had a substantial financial impact. Whereas in the original judgment NetScout was ordered to pay Packet $5.75 million in damages, $2.8 million in enhancement, and ongoing royalties at a rate of 1.55%, after the remand the amended judgment required NetScout to pay Packet only $2.25 million in damages, approximately $1.1 million in enhancement, and an ongoing royalty rate

---

[1]    We are not holding that the need for a formulaic calculation of the exact dollar amount of, for example, pre-judgment or post-judgment interest or post-judgment running royalties necessarily renders a judgment non-immune to a subsequent patentability determination under the rule of *Fresenius II*. These issues are not presented to us in this case.

of 1.355%. These financial consequences are a further indication that something more than "nothing . . . but execute the judgment" was required on remand from *Packet I*. *Id.*

### C

Packet emphasizes that "this case is in a distinctly different procedural posture" from *Fresenius II* and our other decisions, because "this Court has already affirmed liability and damages and did not remand to resolve open damages issues with the possibility for further review by this Court." Appellee's Br. at 57. Packet's description of the posture here is not quite right, as the impact of excision of pre-judgment damages on enhanced damages was an issue left open by our remand in *Packet I*. But even if Packet's characterization were accurate, our precedents hold that remanded patent cases remain vulnerable to post-mandate developments concerning patentability, even if liability – including patent validity – has already been conclusively resolved by appellate review.

As we already noted, by the time we issued *Fresenius II*, 721 F.3d at 1332-33, that case had been before us in a previous appeal, in which we had affirmed the district court's grant of JMOL that the claims of the '434 patent were not invalid. *See Fresenius I*, 582 F.3d at 1302. Nonetheless, after we subsequently affirmed the PTO's reexamination cancellation of the '434 patent claims on which the district court judgment had been based, we ordered dismissal of the infringement case. *See Fresenius II*, 721 F.3d at 1332. We held that "the district court must apply intervening legal developments affecting the asserted patent's validity, even if the court of appeals already decided the validity issue the other way . . . because the appellate mandate had not ended the case." *Id.* at 1342.

We predicated our *Fresenius II* holding on the Supreme Court's similar determination in *Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82 (1922). In *Simmons*, the patentee

had sued the defendant for patent infringement and also for unfair competition. *See id.* at 83. The district court found for the patentee on both claims. *See id.* at 83-84. On appeal, the Third Circuit affirmed the district court judgment of unfair competition but reversed as to patent infringement, holding that the asserted claims – which were contained in a reissue patent – were void "upon the ground that [they] broadened the original patent." *Id.* at 84. The Third Circuit issued a mandate instructing the district court to modify its decree in accordance with the appellate opinion. *Id.* Accordingly, on remand, the district court dismissed the patent infringement claim, granted injunctive relief on the unfair competition claim, and ordered the defendant to pay "damages sustained by reason of unfair trade to be ascertained and reported by a master." *Id.*

While the unfair competition damages accounting was still pending before the master, the Supreme Court held in an unrelated case that the reissued claims of the same patent that was asserted in *Simmons* were valid. *See id.* at 85. Citing this development as "new facts that had arisen since the decree entered," *id.* (internal quotation marks omitted), the patentee in *Simmons* asked the district court to review its previous dismissal of the patent infringement claim. The district court did so, entering a new judgment sustaining the validity of the reissued patent claims and finding the defendant liable for infringement. After the Third Circuit again reversed the district court, *see id.* at 86-87, the Supreme Court reversed, thereby affirming the judgment of patent infringement. In doing so, the Supreme Court explained that because "[t]he suit was still pending" at the time the Supreme Court had issued its determination in the other case, it was "eminently proper that the decree in the present suit should be made to conform to" the Supreme Court's intervening decision. *Id.* at 91. The Court observed that proceedings with respect to the unfair competition claim were still ongoing: specifically, "an inquiry before a master still was necessary before final

decree could pass; an inquiry not formal or ministerial, but judicial in order to ascertain the amount of the damages to be awarded." *Id.* at 89. While the patent infringement claim had been concluded on the merits, the case itself remained pending, which meant it could still be impacted by subsequent developments, including a determination regarding patent validity. *See id.*; *see also Chrimar*, 785 F. App'x at 856 ("A case is generally to be considered as a whole in judging its pendency.").

We summarized the *Simmons* holding in *Fresenius II* as follows: "even though there had been an appellate decision entirely resolving the patent infringement claims, because there had not yet been a final judgment on the unfair competition claims, the Supreme Court's intervening decision [on patent validity in the other case] was binding as to the infringement claims." 721 F.3d at 1343. In other words, to defeat application of a subsequent patentability determination, a case needs to reach the stage that "leaves nothing for the court to do but execute the judgment." *Id.* at 1341. If the case, *as a whole*, has not reached that stage, the judgment may be impacted by subsequent developments, even developments that relate to issues of patent validity that had themselves been fully resolved in an earlier appeal.

Hence, again, even accepting Packet's contention that this case, following the *Packet I* remand, was at a more advanced stage than were the cases we addressed in *Fresenius II*, *Chrimar*, and *XY*, the issue of finality in this context is not one of degree. Instead, we apply a "yes/no" analysis: is there, post-mandate, anything left to do other than execute the judgment? If the answer is "yes," then the case as a whole is not "final" and is not, therefore, immune to the impact of subsequent developments with respect to the validity of the patents on which its infringement and invalidity claims are based. Only if the answer is "no" has the *Fresenius II* finality requirement been met, rendering the judgment immune to subsequent developments.

D

Our decisions in *Chrimar*, *XY*, and *VirnetX* are all consistent with our holding today. In *Chrimar*, 785 F. App'x at 855, after the patentee prevailed at a jury trial, the district court entered judgment awarding damages and ongoing royalties. On appeal, we affirmed the district court on all issues presented to us except for the construction of a single claim term, which we reversed, requiring us to remand the case for further proceedings. Shortly before we issued our mandate, the Board issued final written decisions in IPRs brought by third parties, finding all asserted claims unpatentable. On remand, the accused infringer "sought certain relief based on the Board's unpatentability decisions," including "a stay of the ongoing royalties, []or a stay of the proceedings as a whole, and for relief from the judgment." *Id.* The district court denied the motion to stay, declined to grant relief from the judgment, and entered an amended final judgment which "included the continuing order to pay ongoing royalties." *Id.*

The accused infringer appealed to us again. We heard oral argument in its appeal on the same day we considered the patentee's appeal from the Board's unpatentability determinations. Later we affirmed the Board. *See id.* at 855-56. Then, in the accused infringer's appeal from the district court's amended judgment, we found that the district court case had "remain[ed] pending" during the IPRs, so "the now-affirmed unpatentability determinations by the Board as to all claims at issue must be given effect in this case." *Id.* at 858. We vacated the district court's amended final judgment and remanded the case with instructions that it be dismissed.

Similarly, in *XY*, 890 F.3d at 1294, we decided that we did not need to address the accused infringer's invalidity arguments in its appeal from the district court's denial of a new trial on invalidity, in view of our same-day affirmance in a separate appeal stemming from the Board's IPR

decision that the relevant claims were unpatentable. We explained that our affirmance of the Board's determination of unpatentability "renders final a judgment on the invalidity of the [asserted patent], and has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent." *Id.* We noted that "the fact that the Defendant in this case and the Petitioners . . . at the Board were different parties is of no consequence." *Id.* at 1295. We dismissed the accused infringer's appeal as moot.

We confronted a similar situation most recently in *VirnetX II*, 2023 WL 2770074, at *1. There, in an earlier appeal, we had affirmed the district court's judgment of infringement as to two asserted patents but had simultaneously reversed as to two others. *See VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796, 798 (Fed. Cir. 2019) ("*VirnetX I*"). We had also vacated the damages award and remanded for further proceedings. *See VirnetX II*, 2023 WL 2770074, at *1. After the district court entered an amended judgment on remand, containing a revised damages award, the accused infringer appealed again. In the meantime, the Board found the patent claims giving rise to the infringement judgment unpatentable, and we affirmed the Board. We then determined that, given that "we ha[d] affirmed the Board's finding of unpatentability," the patentee "ha[d] lost its cause of action, and its dispute" with the accused infringer was moot. *Id.* Therefore, we vacated the district court's judgment and remanded with instructions to dismiss the case.

Therefore, in accord with *Fresenius II*, as well as our numerous similar decisions, we are required to apply here our affirmance of the Board's determination that the patent claims on which Packet's judgment of infringement against NetScout is based are unpatentable. Packet's suit against NetScout was not "final" as it proceeded on remand in the Eastern District following our mandate in *Packet I*, even though we had at that point affirmed a judgment of infringement of valid patent claims. Packet's judgment

had not reached a stage at which it would be immune to subsequent developments relating to the patentability of the patent claims on which it was based. Thus, we must remand this case with instructions that it be dismissed.

## III

Packet raises one additional argument against our disposition here. Packet contends that even if its case was not "final" when it was proceeding on remand in the Eastern District, it is sufficiently final now. That is because, in Packet's view, once the amended judgment was entered on May 4, 2022, there was then nothing for any court to do other than execute that judgment. Packet's contention lacks merit because it fails to accept that this case remains pending as a result of NetScout's non-frivolous appeal of the district court's amended judgment.

Although Packet does not dispute that NetScout had a right to appeal aspects of the amended judgment that were unfavorable to it, *see generally Chrimar*, 785 F. App'x at 856 ("[F]inality generally does not exist when a direct appeal is still pending . . . ."), it insists that NetScout only appealed issues that are "insubstantial and legally untenable," Appellee's Br. at 59. It cannot be, according to Packet, that an otherwise "final" case can remain pending – and therefore vulnerable to subsequent developments relating to patentability – simply by asserting frivolous arguments on appeal.

Packet correctly points out that we have previously contemplated this type of situation. In *Chrimar*, 785 F. App'x at 858, we recognized we might someday encounter a party engaged in "an abuse of the judicial process in the form of presentation of insubstantial arguments." For instance, an accused infringer knowing of the pendency of parallel Board proceedings might try to keep its infringement case alive by pressing a frivolous appeal. In *Chrimar*, we did not need to decide the "questions that might arise about application of the *Fresenius/Simmons* preclusion

principle to a case that has been kept alive only on insubstantial grounds." *Id.* at 856. And we reach the same conclusion here. Even assuming that an appeal consisting solely of insubstantial issues would render a district court judgment "final" for *Fresenius II* purposes, NetScout's appellate issues are not insubstantial.

The issue regarding the impact on the enhanced damages award of our mandated requirement to vacate the award of pre-suit damages is not insubstantial. As we have already explained, in our *Packet I* mandate we reversed the district court's award of pre-suit damages and vacated "any enhancement thereof." 965 F.3d at 1316. We left it to the district court on remand to assess the impact of the reduction in damages on the enhanced damages portion of the judgment. The parties vigorously contested this issue on remand, so it was subject to extensive litigation. Specifically, Packet sought to continue to receive the full enhancement it had been awarded prior to *Packet I*, arguing that the finding of willful infringement was based on NetScout's post-suit conduct and, anyway, *Packet I* did not alter the district court's analysis of the enhancement factors set out in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992). By contrast, NetScout urged the district court to reconsider the *Read* factors and, after doing so, decide to award no enhanced damages.

The district court rejected both parties' positions. It instead reduced its pre-mandate enhanced damages award by the same proportion that it had reduced the compensatory damages award, i.e., by approximately 61%.

NetScout's appeal of the district court's resolution of this dispute is not insubstantial. If we were to reach the merits of the appeal, and NetScout were to prevail, the approximately $1.1 million in enhanced damages would be reduced or possibly even eliminated.

Similarly, the issue regarding the ongoing royalty rate for NetScout's post-judgment infringement is also not

insubstantial.  On remand from *Packet I*, NetScout sought to reduce this rate from 1.55% to 1.16%, based on changed circumstances, including our vacating the pre-suit damages award and the Board's final written decisions finding all asserted claims to be unpatentable.  Packet countered that no modification was warranted and, in the alternative, the rate should not be reduced to any lower than 1.3%.

After receiving extensive briefing and hearing argument, the district court rejected both proposals, setting the ongoing royalty rate at 1.355%.  NetScout's appeal, by which it asks us to adjust the ongoing royalty rate to its preferred 1.16%, is not insubstantial.  Although Packet insists there would not be a large, direct financial impact, *see* Appellee's Br. at 60 (suggesting NetScout would save only $13,000 by prevailing on this portion of its appeal), we have been given no persuasive reason to deem the appellate issue (including its potential financial impact) to be insubstantial.

For these reasons, the ongoing pendency of this case is not the result of NetScout's assertion of issues that are "insubstantial and legally untenable." *Id.* at 59.  Thus, again, even assuming there is an exception to the *Fresenius II* finality doctrine for cases that are kept alive solely by such frivolities, this is not such case.  Hence, the Board's unpatentability determinations must be given effect, which requires that we remand this case for dismissal.

IV

We have considered the parties' remaining arguments and find them unpersuasive.  Accordingly, we vacate the district court's amended final judgment and remand with instructions to dismiss the case as moot.

**VACATED AND REMANDED**

COSTS

No costs.